UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MANJOT KAUR,<br><br>                Petitioner,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>                Respondents. | Case No. C19-1863-RAJ-MAT<br><br>REPORT AND RECOMMENDATION |

I. <u>INTRODUCTION</u>

Petitioner, a native and citizen of India, brings this 28 U.S.C. § 2241 immigration habeas action through counsel to challenge her expedited removal order and continued detention at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.[1] (*See* Pet. (Dkt. 1).) The Court stayed her removal pending adjudication of her claims. (Dkt. 3.) The Government has filed a return memorandum and motion to dismiss. (MTD (Dkt. 5).) Petitioner did not file an opposition. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be GRANTED,

---

[1] NWIPC was previously known as the Northwest Detention Center.

REPORT AND RECOMMENDATION - 1

petitioner's habeas petition be DENIED, the stay of removal be VACATED, and this action be DISMISSED with prejudice.

## II. BACKGROUND

Petitioner left India on July 15, 2019, and traveled to Canada. (Lambert Decl. (Dkt. 6), Ex. H at 5, 9.) On October 13, 2019, she entered the United States without inspection by walking over the U.S.-Canada border near Sumas, Washington. (*Id.*, Ex. A.) U.S. Customs and Border Patrol ("CBP") agents encountered her less than an hour later and arrested her after she admitted to entering the United States illegally. (*Id.*) At the Sumas Border Patrol Station, petitioner alleged a fear of returning to India. (*Id.*) As a result, CBP processed her for expedited removal under 8 U.S.C. § 1225(b)(1) and referred her for an interview with a U.S. Citizenship and Immigration Services ("USCIS") asylum officer ("AO") to determine whether she had a credible fear of persecution or torture. (*Id.*) CBP also served her with Form I-867, a copy of her sworn statement (*id.*, Ex. B); Form I-860, Notice and Order of Expedited Removal (*id.*, Ex. C); Form I-296, Notice to Alien Ordered Removed/Departure Verification (*id.*, Ex. D); and Form M-444, Information about Credible Fear Interview (*id.*, Ex. E). An interpreter read Forms I-867 and M-444 to petitioner in Punjabi, her best language, and petitioner acknowledged understanding the documents. (*Id.*, Ex. A at 3, Ex. B, Ex. E.) Shortly thereafter, CBP transferred her to U.S. Immigration and Customs Enforcement ("ICE") custody at the NWIPC. (Pet. at ¶ 11.)

On October 23, 2019, an AO from USCIS's San Francisco Asylum Office conducted a credible fear interview with petitioner. (Lambert Decl., Ex. H.)[2] Prior to the interview, petitioner received a list of pro bono legal service providers for the Tacoma Immigration Court. (*Id.*, Ex. F.) The AO conducted the interview over the telephone with a Punjabi interpreter. (*Id.*, Ex. H at 1.)

---

[2] The AO's Pre-Screening Interview Notes are not a verbatim recording of the interview but provide the AO's contemporaneous account of the questions and answers. (*See* Lambert Decl., Ex. H at 1.)

REPORT AND RECOMMENDATION - 2

Petitioner confirmed she could understand the interpreter, had read and understood Form M-444 describing the credible fear interview process, and wanted to continue the interview without an attorney or consultant present. (*Id.* at 1-2.) The AO then placed her under oath. (*Id.* at 2.)

The AO questioned petitioner about her credible fear claim. She testified that in 2014, a man named Manjit Singh demanded she have a friendship with him, and when she rebuffed him with a slap in the face, he started to harass her and has constantly harassed her since. (*Id.* at 4-6.) She reported that when she would use public transportation to go to university, he would pressure her to have a friendship with him, slap her, and threaten to kill her. (*Id.*) He once beat her when she was outside her home and threatened to kill her if she did not have sex with him. (*Id.* at 5.) When petitioner informed her family, they were more concerned with their respect and honor in society than with her safety and wellbeing; they told her to marry somebody else so Mr. Singh would stop harassing her. (*Id.*) On April 14, 2019, the last time petitioner saw Mr. Singh, he approached her with a gun, wanting to take her somewhere, but he left when she yelled for help. (*Id.*) She also testified that Mr. Singh was in a gang, and his gang told her they would leave her alone if she had a friendship with him. (*Id.* at 7.) In response to questions from the AO, petitioner stated that Mr. Singh never went to her home or spoke with any of her family members. (*Id.* at 8.)

The AO then asked petitioner why she left India. (*Id.* at 5.) She responded that her family wanted her to get married, but she loves and wants to marry someone who is in the United States. (*Id.*) When she told her family of her desire to marry the man in the United States, they stopped talking to her even though she was living with them. (*Id.* at 5-6.) She stated that her family pressured her to get married and her father beat her. (*Id.* at 6.)

The AO next asked if petitioner had gone to the police. (*Id.*) She responded that she went to the police once and "told them the whole situation about the boy," but the police did not stay or

REPORT AND RECOMMENDATION - 3

do anything and she "felt like they would not listen to" her. (*Id.*) One police officer told her to return with her family, but petitioner told the AO that her family would not listen to her and did not want to get involved. (*Id.* at 7.)

The AO also asked what petitioner believed would happen to her if she returned to India. (*Id.*) She stated she believed Mr. Singh would kill her and her family would force her to marry someone or keep her at home if she refused. (*Id.* at 7-8.)

The AO asked whether the police or authorities could protect petitioner. (*Id.* at 8.) She responded that she believed they would not be able to because Mr. Singh is related to the Congress party, which is the current government. (*Id.*) The AO asked how Mr. Singh was related to the Congress party, and petitioner responded that she did not have specific information but knew he voted for the party. (*Id.*) She stated that she did not know whether Mr. Singh had any connections with the police. (*Id.*) She also stated that her family did not have connections with the police. (*Id.*)

At the end of the interview, the AO confirmed that petitioner understood his questions and the interpreter. (*Id.* at 10.) The AO then summarized petitioner's claim as follows:

> You testified that you are afraid to return to India. You were beaten, threatened with death, and harassed by a boy because he wanted you to be friends and to have sex with him. You reported him to the police, but the police did not help you. You told your family about the problem and they said you had to get married to stop the problem. You refused because you loved another man. They told you that you will cause them dishonor to the family and your father beat you. You said they were more concerned about family honor than yourself. You fear that you will be killed by the boy if you were to return. You believe your family will ignore you and lock you up in the house if you were to return. You do not think the police or any authorities can protect you because the boy voted for the Congress party. You do not think you can live safely anywhere else in India because you believe the boy will be able to find you.

(*Id.*) Petitioner confirmed this was a correct summary of her testimony. (*Id.*)

REPORT AND RECOMMENDATION - 4

1    On October 25, 2019, petitioner received Form I-869, Record of Negative Credible Fear
2    Finding. (*Id.*, Ex. I.) The form indicated that the AO determined petitioner had testified credibly
3    but had not established a credible fear of persecution in India because "[t]here is no reasonable
4    possibility that the harm you experienced and/or the harm you fear is on account of your race,
5    religion, nationality, political opinion, or membership in a particular social group." (*Id.*) The AO
6    also determined that petitioner had not established a credible fear of torture in India because she
7    had not established there was a reasonable possibility that the "harm you fear would be inflicted
8    by or at the instigation of, or with the consent or acquiescence of, a public official or other person
9    acting in an official capacity." (*Id.*) An interpreter read the form to petitioner over the telephone.
10   (*Id.*)

11   Petitioner requested that an immigration judge ("IJ") review the AO's decision. (*Id.*; *see
12   also id.*, Ex. J.) Prior to the credible fear review hearing ("Review Hearing"), petitioner was served
13   with Form I-863, Notice of Referral to Immigration Judge (*id.*, Ex. J); Form I-870, Record of
14   Determination/Credible Fear Worksheet (*id.*, Ex. G); the Credible Fear Determination Checklist,
15   an internal document explaining the basis for the AO's negative credible fear finding (*id.*, Ex. K);
16   the AO's Credible Fear Asylum Pre-Screening Interview Notes (*id.*, Ex. H); Form I-860, Notice
17   and Order of Expedited Removal (*id.*, Ex. C); and Form I-867, Record of Sworn Statement (*id.*,
18   Ex. B).

19   On October 31, 2019, petitioner appeared for her Review Hearing where she was
20   represented by counsel. (*Id.*, Exs. L, M; Pet. at ¶ 20.)[3] A Punjabi interpreter appeared
21   telephonically. (Lambert Decl., Ex. M.) The IJ gave petitioner an opportunity to submit additional
22   evidence not in the record created by the AO. (*Id.*) Petitioner submitted articles about honor
23

---

[3] Exhibit M is an audio recording of the Review Hearing.

REPORT AND RECOMMENDATION - 5

killings of women in India and other countries, as well as an affidavit from her best friend in India, Hardeep Kaur.[4] (Pet., Exs. C-E.) Ms. Kaur attested to much of what petitioner had already told the AO. (*See id.*, Ex. C.) Ms. Kaur also relayed that one night, petitioner came to the home Ms. Kaur lives in with her parents and reported that her family was going to kill her. (*Id.*) Ms. Kaur stated that petitioner's family came looking for her a few hours later, but Ms. Kaur's family hid her in their home. (*Id.*) Ms. Kaur also attested that a couple of days later, police came to her home and threatened her and her father with their guns. (*Id.*) Ms. Kaur's mother helped petitioner escape out the back door. (*Id.*) The police told Ms. Kaur to tell petitioner that they would find her and that either the police or her family would kill her if she did not listen. (*Id.*) According to Ms. Kaur, petitioner's family and the police continue to come by her home and threaten her. (*Id.*)

The IJ also gave petitioner an opportunity to testify. (Lambert Decl., Ex. M.) The IJ asked whether the information petitioner gave the AO was true and complete to the best of her knowledge. (*Id.*) Petitioner responded that she was very scared during the interview and was not able to give all the information. (*Id.*) The IJ asked whether the information she gave was true, and petitioner responded that it was "true but not proper." (*Id.*) The IJ asked whether petitioner had ever been harmed or threatened by the authorities in India. (*Id.*) Petitioner responded that the police had threatened her on June 30, 2019. (*Id.*) In response to questions from the IJ, petitioner testified that after her parents badly beat her one night, she went to Ms. Kaur's house, and police came with guns to find her and threatened Ms. Kaur's family. (*Id.*) Petitioner testified that later the police were looking for her and were following her. (*Id.*) Petitioner explained that Ms. Kaur's father helped her leave India. (*Id.*)

---

[4] Although petitioner and Ms. Kaur have the same last name, they are not related. (*See* Pet., Ex. C.)

REPORT AND RECOMMENDATION - 6

At the end of the hearing, the IJ stated that she reviewed the AO's materials and the materials from petitioner's attorney and found that petitioner had not established a significant possibility she would be persecuted on account of a protected ground. (*Id.*; *see also id.*, Ex. L.) The IJ further found that petitioner had not established a significant possibility that she would be intentionally subjected to serious physical or mental harm inflicted by, or at the instigation of, or with the consent or acquiescence of, a government official or other person acting in an official capacity. (*Id.*, Exs. L, M.) Accordingly, the IJ affirmed the AO's determination and returned the case to the U.S. Department of Homeland Security ("DHS") for removal. (*Id.*, Exs. L, M.)

On November 17, 2019, petitioner initiated the instant action and filed a motion seeking a stay of removal, which the Court granted. (Dkts. 1-3.) In her habeas petition, she seeks to challenge the procedures that led to the issuance of the expedited removal against her, as well as her continued detention. (Pet. at 2.) She alleges that her Fourth and Fifth Amendment rights were violated "in disregard of substantive and procedural due process" (*id.*) and that she was ordered removed without a "meaningful opportunity to demonstrate that [she] is being held pursuant to the erroneous application or interpretation of relevant law" (*id.* (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))). Petitioner alleges that there is no reasonable basis for the AO's negative credible fear determination, citing her testimony that she was threatened with an "honor killing" by her parents, with the help of the police. (*Id.* at 6.) She also claims that the AO "impermissibly placed the burden of proof regarding internal relocation on [her]," failed to engage in any individualized analysis regarding internal relocation, and failed to address the potential harm Mr. Singh, her parents, and the police might inflict upon her in a new state. (*Id.* at 6-8.) She also claims the IJ ignored the additional testimony and evidence she presented at the Review Hearing and failed to engage in any analysis. (*Id.* at 8-9.) She claims that the AO's and IJ's "conclusions, and

the methods by which they were reached, fly in the face of asylum law and the law regarding relief available under Article 3 of the U.N. Convention Against Torture [("CAT")]." (*Id.* at 8.) As relief, she seeks a correctly conducted credible fear review proceedings and release on bond. (*Id.* at 9-10.)

The Government timely filed a motion to dismiss (MTD), and petitioner did not file a response.

### III.   DISCUSSION

A.   Expedited Removal Proceedings

There is no dispute that petitioner is an "applicant for admission"—a noncitizen who "arrive[d] in the United States," or is "present" in the United States but has "not been admitted." 8 U.S.C. § 1225(a)(1). An applicant for admission who is unable to affirmatively show, to the satisfaction of an immigration officer, that he or she "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," 8 U.S.C. § 1225(b)(1)(A)(iii)(II), is generally subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order, 8 U.S.C. § 1225(b)(1)(A)(i). If, however, the noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the inspecting immigration officer must refer the noncitizen for an interview with an AO. 8 U.S.C. § 1225(b)(1)(A)(ii); *see also* 8 C.F.R. §§ 235.3(b)(4), 208.30(d).

The AO interviews the noncitizen, reviews relevant facts, and determines whether the noncitizen has a credible fear. *See* 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. § 208.30. The purpose of the interview is to "elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture." 8 C.F.R. § 208.30(d). The AO must conduct the interview in a nonadversarial manner and in a language chosen by the noncitizen. 8 C.F.R. §§

208.30(d), (d)(5). At the time of the interview, the AO must verify that the noncitizen has received Form M-444, Information about Credible Fear Interview in Expedited Removal Cases, and understands the credible fear determination process. 8 C.F.R. § 208.30(d)(2). The noncitizen may present evidence and consult with any person of his or her choosing prior to the interview, at no expense to the government, so long as it does not unreasonably delay the process, and any person with whom the noncitizen consults may be present at the interview. 8 C.F.R. § 208.30(d)(4). The AO must create a summary of the material facts presented by the noncitizen. 8 C.F.R. § 208.30(d)(6). At the end of the interview, the officer must review the summary with the noncitizen and give him or her an opportunity to correct any errors. 8 C.F.R. § 208.30(d)(6).

A credible fear of persecution or torture is established where there is a "significant possibility," taking into account the credibility of the noncitizen's testimony and other facts known to the AO, that the noncitizen could establish eligibility for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), or withholding or deferral of removal under the Convention Against Torture. 8 C.F.R. §§ 208.30(e)(2), (3); *see* 8 U.S.C. § 1225(b)(1)(B)(v). The noncitizen's testimony may be sufficient to sustain his or her burden of proof if it is "credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii) (credibility standard applicable under 8 U.S.C. § 1225(b)(1)(B)(v)).

After the interview, the AO creates "a written record of his or her determination, including a summary of the material facts as stated by the applicant, any additional facts relied on by the officer, and the officer's determination of whether, in light of such facts, the [noncitizen] has established a credible fear of persecution or torture." 8 C.F.R. § 208.30(e)(1); *see* 8 U.S.C. § 1225(b)(1)(B)(iii)(II). A supervisory AO must review the determination before USCIS issues it. *See* 8 C.F.R. §§ 208.30(e)(7), 235.3(b)(2), (b)(7).

REPORT AND RECOMMENDATION - 9

If the AO determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). If the AO determines that the noncitizen does not have a credible fear of persecution, the AO shall order the noncitizen "removed from the United States without further hearing or review," unless the noncitizen requests review by an IJ. 8 U.S.C. §§ 1225(b)(1)(B)(iii)(I), (III). Review by an IJ is *de novo* and must include an opportunity for the noncitizen to be heard and questioned by the IJ, who also may take into evidence any relevant oral or written statement. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. §§ 1003.42(c), (d). The noncitizen may consult with a person of his or her choosing prior to the review, at no expense to the government and so long as it does not "unreasonably delay the process." 8 U.S.C. § 1225(b)(1)(B)(iv); *see* 8 C.F.R. § 1003.42(c). The review hearing "shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination . . . ." 8 U.S.C. § 1225(b)(1)(B)(iii)(III); *see* 8 C.F.R. § 1003.42(e). If the IJ determines that the noncitizen does not have a credible fear of persecution or torture, the IJ affirms the AO's determination and remands the case to DHS for execution of the expedited removal order. 8 C.F.R. § 1003.42(f) ("No appeal shall lie from a review of an adverse credible fear determination made by an immigration judge.").

Any noncitizen subject to these provisions "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

B.   <u>Judicial Review of Expedited Removal Orders</u>

Congress has limited juridical review of expedited removal orders: "Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the

REPORT AND RECOMMENDATION - 10

action, no court may . . . enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude [a noncitizen] in accordance with section 1225(b)(1) of this title except as specifically authorized in [8 U.S.C. § 1252(e)] . . . ." 8 U.S.C. § 1252(e)(1)(A).

Section 1252(e)(2) permits judicial review of expedited removal orders through habeas proceedings but limits review to determinations of:

> (A) whether the petitioner is [a noncitizen],
>
> (B) whether the petitioner was ordered removed under [§ 1225(b)(1)], and
>
> (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is [a noncitizen] lawfully admitted for permanent residence . . . .

8 U.S.C. § 1252(e)(2); *see* 8 U.S.C. § 1252(a)(2)(A) (limiting judicial review of expedited removal orders to the exceptions provided in § 1252(e)).[5]  The scope of the inquiry allowed under § 1252(e)(2)(B) is "limited to whether such an order in fact was issued and whether it relates to the petitioner.  There shall be no review of whether the [noncitizen] is actually inadmissible or entitled to any relief from removal."  8 U.S.C. § 1252(e)(5).  If a violation is found, the only allowable relief is a removal hearing pursuant to 8 U.S.C. § 1229a.  8 U.S.C. § 1252(e)(4)(B).

Section 1252(e)(3), titled "Challenges on validity of the system," limits jurisdiction as follows:

> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—
>
> (i) whether such section, or any regulation issued to implement such section, is constitutional; or
>
> (ii) whether such a regulation, or a written policy directive, written policy guideline,

---

[5] In addition, the Ninth Circuit has allowed due process claims collaterally attacking expedited removal orders in criminal cases where the noncitizen is charged with criminal reentry. *Pena v. Lynch*, 815 F.3d 452, 455-56 (9th Cir. 2015); *United States v. Raya-Vaca*, 771 F.3d 1195, 1202-1207 (9th Cir. 2014).  This exception is "strictly limited" to criminal reentry cases, *Pena*, 815 F.3d at 456, and therefore it is inapplicable here.

REPORT AND RECOMMENDATION - 11

>or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A); *see United States v. Barajas-Alvarado*, 655 F.3d 1077, 1086 n.10 (9th Cir. 2011) (declining to address "general attacks on the expedited removal process" because they were barred by § 1252(e)(3)); *Li v. Eddy*, 259 F.3d 1132, 1136 (9th Cir. 2001) ("systemic challenges are to be filed in the District of Columbia, and within 60 days of promulgation of the expedited removal procedures"), *vacated as moot*, 324 F.3d 1109 (9th Cir. 2001).[6]

In *Thuraissigiam v. U.S. Department of Homeland Security*, 917 F.3d 1097 (9th Cir. 2019), *cert. granted*, 2019 WL 5281289 (Oct. 18, 2019), the Ninth Circuit held that § 1252(e)(2) violates the Suspension Clause. The petitioner sought to challenge the procedures leading to his expedited removal order, including that the AO and IJ on review "failed to elicit all relevant and useful information" bearing on whether he had a credible fear of persecution or torture, and "failed to consider relevant country conditions evidence." *Id.* at 1102. The core of his claim was that "the government failed to follow the required procedures and apply the correct legal standards when evaluating his credible fear claim." *Id.* at 1116. The district court dismissed for lack of subject matter jurisdiction. *Id.* at 1102. The Ninth Circuit reversed, concluding that § 1252(e)(2) did not authorize jurisdiction over the petitioner's claims but that the Suspension Clause required him to have a "meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Id.* at 1100 (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001))). The court did not decide "what right or rights [the petitioner] may vindicate via use of the writ," but remanded to the district

---

[6] *See Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1141 n.4 (9th Cir. 2008) (although "*Li* was vacated on mootness grounds . . . the case is analytically sound").

REPORT AND RECOMMENDATION - 12

court to exercise jurisdiction over the petitioner's "legal challenges to the procedures leading to his expedited removal order."[7] *Id.* at 1119.

C. Petitioner's Claims

Petitioner states that she brings this action to challenge the procedures that led to her expedited removal order. (Pet. at 2.) She claims (1) the Government violated her Fourth and Fifth Amendment rights, including substantive and procedural due process; (2) the Government ordered her removed without giving her a meaningful opportunity to demonstrate eligibility for asylum; (3) there was no reasonable basis for the AO's negative credible fear determination; (4) the AO improperly conducted the relocation analysis; (5) the AO's and IJ's conclusions and methods violate asylum law and the CAT; (6) the IJ engaged in no analysis and ignored new evidence; and (7) she is entitled to release. (*See generally* Pet.) As explained below, none of these arguments are availing.

Petitioner's first two claims are wholly conclusory. Because she does not explain how her Fourth or Fifth Amendment rights were violated, or why she did not have a meaningful opportunity to demonstrate eligibility for asylum in light of her credible fear interview and Review Hearing, she has not shown that she is entitled to habeas relief on these claims.

Petitioner's third claim regarding the basis for the AO's decision also fails. First, to the extent Petitioner challenges the merits of the AO's decision, rather than the procedures leading to that decision, *Thuraissigiam* does not provide a basis for the Court's jurisdiction. *See Thuraissigiam*, 917 F.3d at 1117 n.20, 1119 n.24 (expressly stating that the court did not consider whether the Suspension Clause requires judicial review of the merits of the credible fear

---

[7] The Ninth Circuit expressly stated that it did not consider whether the Suspension Clause requires judicial review of the merits of the credible fear determination or factual challenges to an expedited removal order. *Thuraissigiam*, 917 F.3d at 1117 n.20, 1119 n.24.

REPORT AND RECOMMENDATION - 13

determination or factual challenges to an expedited removal order); *Patel v. U.S. Dep't of Homeland Sec.*, No. 19-1690, 2020 WL 1067833, at *7 (W.D. Wash. Feb. 13, 2020), *R & R adopted*, 2020 WL 1062943 (W.D. Wash. Mar. 5, 2020) ("*Thuraissigiam* did not establish that the Suspension Clause requires judicial review of the merits of a credible fear determination."); *Lopez-Mendoza v. Barr*, No. 19-1448, 2019 WL 6710861, at *5 (C.D. Cal. Sept. 11, 2019) (finding no jurisdiction under *Thuraissigiam* to consider challenges to an IJ's factual determinations or to reweigh the evidence).

Second, to the extent the Court has jurisdiction to consider the claim, the AO provided a reasonable explanation for the decision based on the evidence before him.[8] (Lambert Decl., Ex. K.) On the Credible Fear Determination Checklist, the AO explained that petitioner did not establish past persecution because the events she described did not occur because of her race, religion, nationality, membership in a particular social group, or political opinion. (*Id.* at 2.) Rather, Mr. Singh targeted her because she refused to be friends with him and have sex with him, and "harm based on revenge is not on account of a protected characteristic." (*Id.*) The AO also explained that the harm she suffered from her father was a family issue and was not on account of a protected characteristic. (*Id.*) In addition, the AO found no evidence that petitioner would be harmed in the future based on a protected category. (*Id.*) As to torture, the AO found:

> The applicant has failed to establish that the harm she fears would be at the instigation of or with the consent or acquiescence of a public official. Although the applicant went to the police to report Manjit Singh, they just stared at her and told her to come back with her family. However, the applicant never returned to the police station or report[ed] any more incidents with Manjit Singh to the police. The applicant's notion that the police will not protect her because of Manjit Singh's support for the Congress party is based on her own speculations and assumptions as she was unable to provide a linking connection or relationship between Manjit, the police, and the Congress party. Furthermore, the applicant has not reported her

---

[8] Petitioner cites her testimony at the Review Hearing and additional evidence that her parents threatened to kill her with the support of the police (Pet. at 6), but this information was not presented to the AO.

REPORT AND RECOMMENDATION - 14

family to the police and testified that her family has no ties to any police or authorities.

(*Id.* at 3.) Based on the foregoing, the Court concludes that the AO had a reasonable basis for the negative credible fear determination.

Petitioner's fourth claim regarding relocation analysis fails because the AO did not base the negative credible fear determination on petitioner's ability to relocate within India; therefore, relocation analysis is irrelevant in this case. Petitioner's fifth claim regarding the AO's and IJ's conclusions and methods is wholly conclusory, like her first two claims, and fails for the same reason. As to the sixth claim regarding the IJ's lack of analysis, petitioner fails to explain why this is a violation of her rights or cite any statute or regulation requiring that the IJ provide an explanation. The IJ reviewed the evidence, including the AO's Credible Fear Determination Checklist and the additional evidence submitted by petitioner's attorney, heard petitioner's testimony, and affirmed the AO's determination. As noted above, to the extent petitioner challenges the merits of the IJ's decision, the Court does not have jurisdiction to consider the claim. Petitioner fails to establish any procedural error entitling her to habeas relief.

Finally, petitioner's request for release should be denied. The expedited removal statute provides for mandatory detention until petitioner is removed. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); *see Ms. L. v. U.S. Imm. & Customs Enforcement*, 302 F. Supp. 3d 1149, 1159 n.3 (S.D. Cal. 2018) ("Individuals in the expedited removal process who have not been found to have a 'credible fear of persecution' for asylum purposes are subject to mandatory detention."). Under the statute and regulations, petitioner may be released only if she is granted parole, i.e., released under narrowly prescribed circumstances, such as "urgent humanitarian reasons or significant public benefit[,]" 8 U.S.C. § 1182(d)(5)(A), medical emergency, or a "legitimate law enforcement objective," 8 C.F.R.

§ 235.3(b)(2)(iii). In addition, due process requires a bond hearing only when § 1225(b) detention becomes "unreasonably prolonged." *Banda v. McAllenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). To determine whether detention has become unreasonably prolonged, the Court must conduct a case-specific analysis that considers: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings cause by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* (quoted source omitted). Having considered all these factors, the Court concludes that petitioner's detention, which has lasted less than six months and is likely to end with her removal shortly after this case is dismissed, is not unreasonably prolonged and does not violate her Fourth or Fifth Amendment rights, as she alleges.

## IV. CONCLUSION

The Court recommends that the Government's motion to dismiss (Dkt. 5) be GRANTED, petitioner's habeas petition (Dkt. 1) be DENIED, the stay of removal (Dkt. 3) be VACATED, and this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 10, 2020**.

Dated this 24th day of March, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17